IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANIEL A. BERGER,<br>          Plaintiff,<br><br>v.<br><br>HAHNEMANN UNIVERSITY HOSPITAL, TENET HEALTHSYSTEM HAHNEMANN, LLC, HAHNEMANN UNIVERSITY HOSPITAL BILLING DEPARTMENT, DREXEL MEDICINE, DREXEL UNIVERSITY COLLEGE OF MEDICINE, TPS OF PA, LLC, TPS IV OF PA, LLC, TENEANT HEALTHCARE CORPORATION, CONIFER HEALTH SOLUTIONS, LLC, PHILADELPHIA FIRE DEPARTMENT- EMS, MICHAEL GREENBERG, M.D., MICHAEL MCCOLLUM, D.O., NANCY A. MOHSEN, M.D., ROBERT KOENIGSBERG, D.O., ALBERTO NUNEZ, M.D., EVAN HAWBAKER, M.D., ROY BURKET, BERNARD BAKER, JOHN DOE, AND ABC COMPANY.<br>          Defendants. | CIVIL ACTION<br><br><br>NO. 17-2295 |

## MEMORANDUM OPINION

This case arises out of a series of unfortunate events – a late night consuming alcohol, an epileptic seizure, and a poorly placed glass window – compounded by bad luck – a short period in which Plaintiff was uninsured. However, not all unfortunate events give rise to legal wrongs and this case proves the point.

Plaintiff, a young lawyer proceeding *pro se*, brings fifteen claims against twenty-two defendants arising from a medical episode on December 29, 2016 and subsequent attempts by several defendants to collect unpaid medical bills. Those claims include state law claims for negligence (medical malpractice), unjust enrichment, battery, fraud, breach of contract, and

federal claims stemming from violations of the Federal Debt Collection Protection Act (FDCPA), 15 U.S.C. § 1692e, and the civil Racketeer Influenced and Corrupt Organization Act (RICO), 18 U.S.C. § 1962.  Plaintiff has yet to serve all of the Defendants.  Those he has have each filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  Two sets of Defendants have also filed a motion to strike Plaintiff's Certificate of Merit – a document necessary to maintain a malpractice claim brought under Pennsylvania law.  For the reasons outlined herein, their motions will be granted.

I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, Daniel A. Berger, has a history of epileptic seizures.  On December 29, 2016, Plaintiff was walking down 18th Street in Philadelphia, Pennsylvania in front of Second Federal Savings and Loan Association of Philadelphia, Inc. ("Federal Savings") when he began to experience symptoms consistent with a seizure.  Plaintiff does not recall what happened next, though video surveillance from Federal Savings shows him falling through the bank's glass window.  Emergency medical personnel from the Philadelphia Fire Department ("the Fire Department") took him to Hahnemann University Hospital in Philadelphia, Pennsylvania ("Hahnemann").

Plaintiff brings several claims against Hahnemann and its various affiliates stemming from three general complaints about his care there.  First, Plaintiff alleges that his treating doctors did not listen to his warnings:  Plaintiff told clinical staff that he was dehydrated and needed water before taking medication.  Nonetheless, they administered the medication immediately without water and Plaintiff vomited.  Second, Plaintiff alleges that the treating physicians performed numerous tests without his informed consent.  Third, he alleges that the

2

chest and abdomen images ordered by the physicians were not medically necessary.

Plaintiff told the treating physicians that he was concerned about the cost of medical procedures because he was not insured. In response, one of the doctors told him he could "just not pay it."

Shortly after Plaintiff's hospital visit, he began to receive collection notices from Hahnemann and the Fire Department. He refused to pay and tried to negotiate with each of them. Hahnemann refused to negotiate any terms other than a payment plan.

Hahnemann sent Plaintiff two letters, which he says give rise to FDCPA liability. A March 3, 2017 letter demanding payment for services rendered stated, according to Plaintiff falsely, that Defendants had been "attempting to contact" Plaintiff.[1] On March 24, 2017, the hospital sent Plaintiff a letter containing two alleged misstatements. First, it stated that Plaintiff has "failed to either pay in full or contact [Defendants] to make acceptable arrangements to resolve [the] debt." Second, the letter did not contain any mention of Plaintiff's correspondence disputing the debt.

Plaintiff has sued and properly served only three groups of Defendants at this time, all three of which move to dismiss the claims against them. First, the "Hahnemann Defendants" include Hahnemann University Hospital, which is where Plaintiff was treated, and Tenet HealthSystem Hahnemann, LLC, which allegedly owns the hospital. Second, the "Drexel Defendants" include Drexel Medicine and Drexel University (incorrectly identified as Drexel University College of Medicine), health systems associated with the Hahnemann Defendants, as well as Michael Greenberg, a physician from Drexel Medicine who treated Plaintiff. Third, the

---

[1] Plaintiff has attached the letter as an exhibit to his Complaint, but it does not contain the alleged statement. *See* Compl. Ex. P.

"Doctor Defendants" – Michael McCollum, Nancy Mohsen, Robert Koenigsberg, Alberto Nunez, and Evan Hawbaker – are the physicians from Hahnemann who treated Plaintiff.

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare" recitations of the elements of a claim supported only by "conclusory statements" will not suffice. *Id.* at 683. Rather, a plaintiff must allege some facts to raise the allegation above the level of mere speculation. *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 176 (3d Cir. 2010) (citing *Twombly*, 550 U.S. at 555).

In analyzing a motion to dismiss legal conclusions are disregarded, well-pleaded factual allegations are taken as true, and a determination is made whether those facts state a "plausible claim for relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009*).* Generally that determination is made upon a review of the allegations contained in the complaint, exhibits attached appropriately to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.* 998 F.2d 1192, 1996 (3d Cir. 1993).

## III. DISCUSSION

### a. Negligence – Malpractice

In order to initiate a malpractice action in Pennsylvania, a plaintiff must file a timely Certificate of Merit (COM). The COM certifies either that an expert has stated that there was

4

malpractice or that an expert is not necessary to prosecute the action. Pa. R. Civ. P. 1042.3(a).[2]
The Drexel, Doctor, and Hahnemann Defendants have filed a Motion to Strike Plaintiff's COM, or, in the alternative, dismiss his medical malpractice claim because he filed his COM late.

By operation of the provisions of the Rule, Plaintiff's deadline to file the COM was August 24, 2017.[3] Two days before the deadline, he filed a motion for an extension of time to file his COM which it would have been appropriate to grant upon a showing of good cause. Pa. R. Civ. P. 1042.3(d). In his motion, however, rather than provide an explanation as to why he could not filed the COM in a timely manner, Plaintiff argued that Rule 1042.3 was unconstitutional and that he "refuses to, and will continue to refuse to, certify" that expert testimony is not necessary "without a Decree from this Court acknowledging that Plaintiff has not waived any right to call an expert witness in the event that he determines such testimony would strengthen his case." This defiance of Pennsylvania's Rule does not amount to good cause. Accordingly, the Court denied his request for an extension. Regardless, Plaintiff filed a COM more than one week later, on August 31, 2017.

A motion to dismiss is not the proper procedure to dismiss an action for failure to timely file a COM because "[i]f a plaintiff files a complaint and serves a defendant the next day, the plaintiff has fifty-nine more days to file a COM. The defendant, meanwhile, must file a motion

---

[2] Although it is a procedural rule, Pennsylvania's COM requirement has the effect of state substantive law. *See Liggon-Redding v. Sugarman*, 659 F.3d 258, 262-63 (3d Cir. 2011). Thus, here, where the claim is before this Court pursuant to supplemental jurisdiction, it must apply Pennsylvania's COM requirement. *See e.g., Chin v. Chrysler LLC,* 538 F.3d 272, 278 (3d Cir. 2008) (citing *Erie Railroad Co. v. Tompkins,* 304 U.S. 64 (1938)).

[3] The Pennsylvania Rule allows a defendant to move for a judgment of *non pros* when a plaintiff fails to file a COM within 60 days of filing his or her complaint. Pa. R. Civ. P. 1042.3(a). The 60-day period elapsed on August 21, 2017, but Plaintiff's deadline was not until August 24, 2017 because of a second prerequisite; a defendant must also provide 30 days' notice of their intention to move for a judgment of *non pros*. *See* Pa. R. Civ. P. 1042.7; *Schmigel v. Uchal*, 800 F.3d 113, 124 (3d Cir. 2015) (30-day notice requirement is also substantive and must be applied under *Erie*). The Hahnemann Defendants provided notice on July 24, 2017. Therefore, Plaintiff had until August 24, 2017 to file the COM because by that date more than 60 days had elapsed since Plaintiff filed the Complaint *and* 30 days had elapsed since Defendants provided their notice of their intention to move for a judgment of *non pros*.

to dismiss within twenty-one days." *See Schmigel,* 800 F.3d at 122 n. 13. The Third Circuit's reasoned that the notice conditions for filing a COM may not be considered in a motion to dismiss because it is not part of the complaint and need not be filed until after a motion to dismiss is due. *Id.* at 122. A challenge to an untimely or deficient COM may, however, be addressed through a motion to strike because motions to strike can be filed after the 60-day window required by Rule 1042.3(a), as they were here. *See Ramos v. Quien*, 631 F. Supp.2d 601, 611 (E.D. Pa. 2008) (ruling on motion to strike COM where Defendants also filed a motion to dismiss arguing that the COM had not yet been filed).

Plaintiff's COM was not filed in a timely manner. Furthermore, the one document that he did eventually file is deficient because Rule 1042.3(b)(1) requires a separate COM as to each doctor against whom he asserts a claim. Indeed, the one COM that he did file does not even name a single professional against whom Plaintiff's medical malpractice claim is asserted. Accordingly, Defendants' Motions to Strike are meritorious. Furthermore, in not raising any arguments at all in response to the motions, Plaintiff has conceded the point. *See Mathias v. Frackville SCI*, 869 F.3d 175, 187 (3d Cir. 2017) (holding that a party waives an argument when he has not "presented the argument with sufficient specificity to alert the district court."). Accordingly, the motions shall be granted and Plaintiff's malpractice claim shall be stricken.

    **b. Battery**

Plaintiff's battery claim against the Hahnemann, Doctor, and Drexel Defendants is premised on the Defendants' failure to obtain Plaintiff's informed consent before conducting certain imaging tests.

6

i. *No Duty for Hospitals to Obtain Informed Consent*

Pennsylvania law recognizes tort claims, which sound in battery, based on a failure to obtain informed consent. *See Moure v. Raeuchle*, 604 A.2d 1003, 1008 (Pa. 1992). However, only the treating physician has a duty to obtain informed consent. *See Friter v. Iolab Corp.,* 607 A.2d 1111, 1113 (Pa. Super. 1992). Absent a hospital assuming a duty to obtain informed consent, a scenario not alleged here, a hospital is not liable for a battery based on a failure to obtain informed consent. *See Kelly v. Methodist Hosp.,* 664 A.2d 148, 151 (Pa. Super. 1995) ("Beyond our conclusion Pennsylvania law does not recognize the cause of action asserted by appellants, we find compelling reasons for not imposing upon hospitals the duty of obtaining informed consent."); *Cf. Friter*, 607 A.2d at 1113 (holding hospital liable where hospital assumed duty to obtain informed consent imposed by FDA regulations in order to run a clinical trial). Thus, Hahnemann, Tenet Healthsystem Hahnemann, LLC, Drexel University, and Drexel Medicine cannot be liable for failure to obtain informed consent and any claims against them based on a lack of informed consent shall be dismissed.

*ii. No Duty For Doctors to Obtain Informed Consent to Conduct Imaging Tests*

Neither can Plaintiff maintain an action for battery based on a lack of informed consent against Michael Greenberg, Michael McCollum, Nancy Mohsen, Robert Koenigsberg, Alberto Nunez or Evan Hawbaker because doctors need not obtain informed consent before conducting imaging tests under Pennsylvania law. More specifically, Pennsylvania's Informed Consent statute, 40 P.S. § 1303.504, provides a list of instances in which doctors must obtain informed consent. Those include when:

> (1) Performing surgery . . .
> (2) Administrating radiation or chemotherapy

7

(3) Administering a blood transfusion
(4) Inserting a surgical device or appliance
(5) Administrating an experimental medication . . .

40 Pa. Stat. Ann. § 1303.504. Performing diagnostic imaging tests is not included in the list of procedures which require informed consent. While the list is not exclusive, the Pennsylvania Supreme court has provided guidance on the types of procedures that are not covered. In *Morgan v. MacPhail*, 704 A.2d 617, 619 (Pa. 1997), it clarified that it is the "invasive nature of the surgical or operative procedure" which requires informed consent and, thus, informed consent is not required prior to a non-surgical procedure. Imaging is not the kind of invasive procedure which requires informed consent.[4] Therefore, no informed consent is needed prior to running diagnostic tests and any claims based on this theory shall be dismissed. Given the clear state of the law in Pennsylvania, any amendment of the Complaint with respect to Plaintiff's battery claim would be futile. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).

## c. Fraud

Plaintiff's fraud claim concerns certain conduct of the Hahnemann, Doctor, and Drexel Defendants in performing unnecessary medical tests. Although Plaintiff's fraud claim as alleged is murky, pro se filings, such as Berger's must be liberally construed. *See Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 265 (3d Cir. 2011). A generous reading of Berger's Complaint suggests three separate theories of fraud: (1) because the medical procedures lacked

---

[4] *See also Sinclair v. Block*, 633 A.2d 1137 (Pa. 1993) (informed consent doctrine does not apply to doctor's use of forceps during natural childbirth); *Wu v. Spence*, 605 A.3d 395 (Pa. 1992) (no informed consent needed for intravenous radiation treatment); *Hoffman v. Brandywine Hosp.*, 661 A.2d 397 (Pa. Super. 1995) (discussing cases in which the courts declined to require informed consent to administer drugs or radiation); *Davis v. Corizon Health, Inc.*, 2015 WL 518263, at *5 (E.D. Pa. 2015) (informed consent not required to draw blood).

informed consent, they were fraudulent; (2) it was fraudulent not to disclose the financial consequences of the medical procedures; and, (3) charging for unnecessary procedures is fraudulent.

Plaintiff's first theory of fraud merely bootstraps his unsuccessful battery claim into a fraud claim. Since Defendants need not obtain informed consent to provide Plaintiff's treatment, failure to obtain informed consent is not fraudulent. *See Morgan*, 704 A.2d at 619.

As written, Plaintiff's Complaint does not contain sufficient factual allegations to support the second and third theories of fraud. The essential elements of a cause of action for fraud are "[1] a misrepresentation, [2] a fraudulent utterance thereof, [3] an intention to induce action thereby, [4] justifiable reliance thereon and [5] damage as a proximate result." *Wilson v. Donegal Mut. Ins. Co*., 598 A.2d 1310, 1315 (Pa. Super. 1991).

While he has alleged misrepresentations concerning the second fraud theory – to wit, that "[t]he asserted financial consequences for the radiological imaging tests on his chest and stomach were, in fact, materially different from what was represented to him," – the Complaint never discusses what exactly the Hahnemann, Drexel, or the Doctor Defendants represented to him regarding the radiological tests. Citing *Smith v. Renaut*, 564 A.2d 188 (Pa. Super. 1989), Plaintiff seems to argue that the misrepresentations involved Defendants' failure to disclose the price of his diagnostic tests. But *Smith* held that "mere silence is not sufficient in the absence of a duty to speak," and Plaintiff has not identified a specific duty to disclose. *Id.* at 192. In fact, absent a contractual duty, hospitals are under no obligation to state the cost of medical procedures in advance. *See DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 265 (3d Cir. 2008) ("A court could not possibly determine what a 'reasonable charge' for hospital services would be

without wading into the entire structure of providing hospital care and the means of dealing with hospital solvency. These are subjects with which state and federal executives, legislatures, and regulatory agencies are wrestling . . . [which] [t]he Court is ill-equipped to examine."). Thus, to the extent that Plaintiff's fraud claim concerns a failure to disclose the financial consequences of the care he was provided, it shall be dismissed.

Turning to the third possible theory: charging for medically unnecessary tests and procedures can be fraudulent in some circumstances. *See, e.g. U.S. ex rel. Emanuele v. Medicor Assocs.*, 2013 WL 3893323 (W.D. Pa. July 26, 2013) (denying motion to dismiss fraud claims); *U.S. ex rel. Singh v. Bradford Reg'l Med. Ctr.*, 2006 WL 2642518 (W.D. Pa. Sept. 13, 2006) (same). But, here, Plaintiff has neither alleged any misrepresentation concerning the medical necessity of his procedures, nor has he alleged justifiable reliance by, for example, paying for his procedures, and has, thus, not met his pleading threshold. Plaintiff's claim will thus be dismissed without prejudice to amend his Complaint with respect to this fraud theory only.

### d. Intentional Infliction of Emotional Distress

Plaintiff's claim for intentional infliction of emotional distress (IIED), filed against each of the Defendants, is unsustainable given the tort's requirement of extreme or outrageous conduct. *See Pavlik v. Lane Ltd./Tobacco Exporters Int'l*, 135 F.3d 876, 890 (3d Cir. 1998). The conduct must have been "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Reedy v. Evanson*, 615 F.3d 197, 232 (3d Cir. 2010 (quoting *Field v. Phila. Elec. Co.*, 565 A.2d 1170, 1184 (Pa. Super. 1989)). The description of the Defendants' actions set forth in the Complaint does not approach this standard.

### e. Negligent Infliction of Emotional Distress

All three groups of Defendants seek to dismiss Plaintiff's Negligent Infliction of Emotional Distress (NIED) claim against them on the theory that Plaintiff has not alleged a "physical injury." But an NIED claim can be based on a breach of a patient-doctor relationship without alleging a physical injury. *See Toney v. Chester County Hosp.*, 961 A.2d 192 (Pa. Super. 2008), *aff'd* 36 A.3d 83 (Pa. 2011); *see also Weiley v. Albert Einstein Med. Ctr.*, 51 A.3d 202, 217 n.16 (Pa. Super. 2012) (extending NIED liability when there is no concomitant physical injury). Under this theory, however, a plaintiff must still establish the elements of a negligence claim "i.e. that the defendant owed a duty of care to the plaintiff, the defendant breached that duty, the breach resulted in injury to the plaintiff, and the plaintiff suffered an actual loss or damage." *Toney*, 961 A.2d at 198. Plaintiff's Complaint does not state exactly what duty each Defendant owed to him and, thus, his claim for NIED will be dismissed – but without prejudice to re-plead appropriately.

### f. FDCPA Claims

Plaintiff's FDCPA claims assert that the Hahnemann Defendants made false representations in attempts to collect a debt.[5]

Congress passed the FDCPA in order to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692. To state a claim pursuant to the statute, a Plaintiff must sufficiently allege that: (1) he is a consumer; (2) the defendant is a debt collector; (3) the challenged practice involves an attempt to collect a "debt" as the FDCPA defines it; and (4) the defendant has violated a provision of the FDCPA in attempting to collect a debt. *Douglass v.*

---

[5] The Doctor Defendants also moved to dismiss FDCPA claims to the extent Plaintiff alleges those claims against them. As the Complaint contains no allegations whatsoever concerning the Doctor Defendants which are relevant to the FDCPA claims, those claims will be dismissed as well.

*Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014). The Hahnemann Defendants assert that they are not debt collectors within the meaning of the statute.

The FDCPA draws a distinction between "debt collectors," who are covered by the statute, and "creditors" who are not. *See Pollice v. Nat'l Tax Funding, L.P.,* 225 F.3d 379, 403 (3d Cir. 2000). A "creditor" is "any person . . . to whom a debt is owed." 15 U.S.C § 1692(a)(4). In contrast, the statute provides three categories of entities who qualify as "debt collectors." First, a debt collector includes "any business the principal purpose of which is the collection of any debts." *Id.* § 1692a(6). Second, a debt collector includes "any business . . . who regularly collects or attempts to collect . . . debts owed or due another." *Id.* Third, a debt collector includes a "creditor" who uses a name "other than his own which would indicate that a third person is collecting or attempting to collect such debts." *Id.* However, a "debt collector" does not include "any person collecting . . . any debt . . . due another to the extent such activity . . . concerns a debt which was obtained by such person." 15 U.S.C § 1692a(6)(F).

Plaintiff alleges no facts to demonstrate that any defendant is a debt collector under any definition. His allegations show that the Hahnemann Defendants were acting as creditors because they were attempting to collect on a debt that was owed directly to them. *See* 15 U.S.C. § 1692a(4). The fact that Hahnemann's Billing Department sent Plaintiff a bill does not change that result in that a billing department is entitled to collect bills for its parent organization without triggering the statutory definition of a "debt collector" under the FDCPA. *See* 15 U.S.C. § 1692a(6)(B) (excluding those engaged in debt collection "related by common ownership or affiliated by corporate control" to the creditor whose principal business is not debt collection); *see also Pollice,* 225 F.3d at 403 ("Creditors who collect in their own name and whose principal

business is not debt collection . . . are not subject to the Act."); *Aubert v. Am. Gen. Fin., Inc.*, 137 F.3d 976, 978 (7th Cir. 1998) (dismissing FDCPA claims against an internal corporate division which collected debts for original creditor). Adopting Plaintiff's argument would turn any large creditor with a billing department into a debtor.

Accordingly, the Hahnemann Defendants are not covered by the statute and any amendment to assert that they are "debt collectors" is futile.

### g. RICO

Plaintiff also asserts a claim under the civil Racketeer Influenced and Corrupt Organization Act (RICO), 18 U.S.C. § 1962, against all Defendants.[6] Congress enacted RICO in an attempt to ferret out organized crime in the United States. *Russello v. United States*, 464 U.S. 16, 26 (1983) ("[T]he RICO statute was intended to provide new weapons of unprecedented scope for an assault upon organized crime and its economic roots."). However, the Supreme Court has clearly stated that the RICO statute can be used as a "tool for everyday fraud cases brought against 'respected and legitimate enterprises.'" *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 499 (1985). In order to assert a RICO claim, a plaintiff must allege: (1) conduct (2) of an enterprise, (3) through a pattern (4) of racketeering activity as well as an injury resulting from the offensive conduct. *Id.* at 496.

Defendants challenge the sufficiency of Plaintiff's complaint with regard to the first two requirements, to show conduct and that Defendants constitute an enterprise. The Supreme Court has explained that the term "'conduct' requires an element of direction." *Reves v. Ernst & Young*, 507 U.S. 170, 178 (1993). Plaintiff must show that Defendants had "some part in

---

[6] Plaintiff has not served many of the Defendants who he implicates in his RICO claim including TPS of PA, LLC, TPS IV of PA, LLC, Hahnemann University Hospital Billing Department, Tenet Healthcare Corporation, and Conifer Health Solutions, LLC.

directing the enterprise's affairs." *Id*. at 179. Plaintiff has not pleaded any facts to allege that Defendants participated in the operation or management of a RICO enterprise.

Neither has Plaintiff sufficiently pleaded that Defendants constitute an enterprise. An "[e]nterprise includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals ***associated in fact*** although not a legal entity." 18 U.S.C. § 1961(4) (emphasis added); *see also National Organization for Women, Inc. v. Scheidler*, 510 U.S. 249, 257 (1994) ("RICO broadly defines 'enterprise.'"). Plaintiff asserts his RICO claim under the "associated in fact" definition of an enterprise.

The statute does not define an "association-in-fact" enterprise, but the Supreme Court has identified its salient features in two decisions. In *United States v. Turkette,* the Supreme Court held that an association-in-fact enterprise is proven by showing that: (1) there exists an ongoing organization, formal or informal; (2) the various associates of the organization function as a continuing unit; and (3) the organization has an existence separate and apart from the alleged pattern of racketeering activity. 452 U.S. 576, 583 (1981). In *Boyle v. United States*, the Supreme Court expanded those requirements, and required a party to show three structural features of an "association in fact." 556 U.S. 938, 946 (2009). Those features include "purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.*

Plaintiff has not pleaded sufficient facts to demonstrate that the Defendants constitute an "association in fact." Paragraph 241 of Plaintiff's Complaint states, in a conclusory fashion, that Defendants "are part of an enterprise in fact for the purposes of conducting certain business within the health/medical service industry and the ancillary business of billing/collecting for

14

same." It provides no detail, however, regarding any "ongoing organization" or any allegations describing how any such organization functions as a continuing unit as required by *Turkette.* Further, Plaintiff does not provide sufficient details to describe the relationships among those associated with the enterprise as required by *Boyle*.

Plaintiff merely lists a series of named entities and alleged that they worked in concert to engage in racketeering activity. Absent more, his claim cannot survive. *See Richmond v. Nationwide Cassel L.P.,* 52 F.3d 640, 646 (7th Cir. 1995) ("plaintiff's naming of a string of entities does not allege adequately an enterprise."). Given his pro se status, however, Plaintiff's RICO claims will be dismissed without prejudice to re-plead.[7]

### h. Breach of Contract

Count Twelve alleges that the Hahnemann and Drexel Defendants breached Plaintiff's contract by failing to negotiate in good faith, but does not plead that any contract exists between the parties.[8]

Absent a contract, Plaintiff's argument that the Defendants had a duty to negotiate in good faith is not viable. *See Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (applying Pennsylvania law). Plaintiff cites no free-standing duty to negotiate in good faith with those with whom one does not have a contract and his contract claim cannot survive absent an enforceable agreement to negotiate in good faith. *See Channel Home Ctrs. Div. of Grace Retail Corp. v. Grossman*, 795 F.2d 291, 298 (3d Cir. 1986) (requiring party attempting to enforce a breach of the duty to negotiate in good faith to show (1) both parties manifested an intention to

---

7 Defendants have not addressed whether Plaintiff has sufficiently alleged a pattern of racketeering activity.

[8] The title of Count Twelve also states that it seeks a "right of accounting," but Plaintiff's Complaint does not contain any of its elements and, thus, this claim shall be dismissed.

be bound by the agreement; (2) the terms of the agreement were sufficiently definite to be enforced; and (3) there was consideration). Plaintiff argues that the parties have an implied in law contract to render medical services, but this speaks to an unjust enrichment claim rather than a contract claim. *See IT Temple Univ. Hosp., Inc. v. Healthcare Mgmt. Alternatives, Inc*., 832 A.2d 501 (Pa. Super. 2003). Thus, Plaintiff's breach of contract claim shall be dismissed without prejudice to amend his Complaint.

### i. Cross-Motion to Sever Claims

Plaintiff's Response to the Motion to Dismiss also makes a cross-motion to sever his FDCPA claims (but not his RICO claim) to allow him to litigate most of his federal claims in state court and his state claims in federal court. Plaintiff cites no legal authority for this odd request neither does any exist. Even assuming it made sense, Plaintiff's request is untimely. 28 U.S.C. § 1447(c) provides that a motion to remand must be made within 30 days after a notice of removal. The Hahnemann Defendants removed Plaintiff's suit from state court on May 18, 2017. Plaintiff's motion to sever and remand was filed on July 31, 2017, well past the deadline. Plaintiff's reliance on Rule 42(b) of the Federal Rules of Civil Procedure is misplaced. That Rule permits a court to order separate trials of claims within the same action. It does not concern the remand of some, but not all, claims.

### j. Demand for Attorney's Fees

The Hahnemann Defendants, Doctor Defendants, and Drexel Medicine motion to strike Plaintiff's request for attorney's fees shall be granted.

Under Pennsylvania law, as a general rule, a litigant cannot recover counsel fees from an adverse party unless there is express statutory authorization, a clear agreement of the parties, or

some other established exception. *See Snyder v. Snyder,* 620 A.2d 1133, 1134 (Pa. 1993). Unlike Plaintiff's FDCPA and RICO claims, there is no statutory authorization for attorney's fees based on claims of negligence, fraud, battery, and contract. Plaintiff has also not alleged any agreement between the parties concerning attorney's fees either. Therefore, Plaintiff's request for attorney's fees concerning his common law claims will be stricken. *See Moravian Dev. Corp. v. Dow Chem. Co.*, 651 F. Supp. 144, 150 (E.D. Pa. 1986) (striking request for attorney's fees for common law claims under Pennsylvania law).

Plaintiff's request for attorney's fees for his RICO claim must be stricken as well. The Supreme Court has held that a litigant, who is also an attorney and proceeds *pro se*, is not entitled to attorney's fees under 42 U.S.C. § 1988. *See Kay v. Ehrler*, 499 U.S. 432 (1991).[9] The Third Circuit has found that the attorney's fees provisions under 42 U.S.C. § 1988, at issue in *Kay*, and 18 U.S.C. § 1964(c) (RICO's civil remedies provision) are not distinguishable. *See Ne. Women's Ctr. v. McMonagle*, 889 F.2d 466, 473 (3d Cir. 1989).

Therefore, Plaintiff's request for attorney's fees must be stricken as to all common law claims and as to Plaintiff's RICO claim.[10]

### k. Demand to Strike Request for Punitive Damages

The Hahnemann Defendants and the Doctor Defendants move, under Rule 12(f) of the Federal Rules of Civil Procedure, to strike Plaintiff's demand for punitive damages. A motion pursuant to Rule 12(f) is designed to eliminate from "a pleading an insufficient defense or any

---

[9] Plaintiff citation to *Ellis v. Cassidy*, 625 F.2d 227 (9th Cir. 1980), which upholds an award of attorney's fees to a litigant who is also an attorney and represents themselves, is not helpful. That case was overruled by *Kay*. *See Elwood v. Drescher*, 456 F.3d 943, 946 (9th Cir. 2006) (recognizing that *Ellis* has been overruled by *Kay*).

[10] Plaintiff's FDCPA claims have already been dismissed with prejudice so the motion to strike the request for attorney's fees from those claims are now moot.

redundant, immaterial, impertinent or scandalous material." Fed. R. Civ. P. 12(f). The motion is more appropriately brought as a motion to dismiss, and as such, the relief Defendants request shall be regarded as such. *See Stacey v. City of Hermitage*, 178 F. App'x 94, 101 (3d Cir. 2006) (approving dismissal of claim for punitive damages on a motion to strike).

To support a claim for punitive damages, a plaintiff must allege facts demonstrating that the act was done with a bad motive or with a reckless indifference to the interests of others. *See Feld v. Merriam*, 485 A.2d 742, 747 (1984). "The state of mind of the actor is vital" when determining whether to award punitive damages. *Feld*, 485 A.2d at 748. Reckless indifference requires an allegation of evil motive or reckless indifference to the rights of others. *Id.* Plaintiff allegations do not suggest either. Thus, Plaintiff's request for punitive damages will be stricken.

An appropriate order follows

**BY THE COURT:**

/s/Wendy Beetlestone, J.

_____

**WENDY BEETLESTONE, J.**

Date: 11/17/2017